UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARCELLOUS WALKER,

        Plaintiff,

v.                                                      Case No. 18-C-612

SANDY MCARDLE, et al.,

        Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Marcellous Walker, who is representing himself, filed this action under 42 U.S.C. § 1983, alleging that his civil rights were violated. Walker is proceeding on federal and state claims against defendants Laverne Wallace, Shelly Hill, and Sandy McArdle. ECF Nos. 21, 55. He is also proceeding against McArdle's employer, Maxim Physician Resources, under a theory of *respondeat superior*. ECF No. 55. Currently before the court is McArdle and Maxim's motion for summary judgment (ECF No. 107) and their motion to strike (ECF No. 135), and Walker's motion for leave to increase the number of proposed statements of fact and increase the page limit of his response brief (ECF No. 111), his motion for the court to take judicial notice (ECF No. 116), his motion for order to produce security video (ECF No. 120), and his motion to exclude defendants' evidence and expert witness testimony (ECF No. 130).

**PROCEDURAL MOTIONS**

The court will grant Walker's motion to file an additional thirty-three proposed statements of fact and an oversized memorandum. ECF No. 111. As McArdle and Maxim highlight, Walker's motion is untimely because he filed it at the same time he filed his response materials.

Nevertheless, the court will grant the motion because Walker is pro se and therefore should be accorded a measure of leniency on procedural matters. The court will deny McArdle and Maxim's motion to strike Walker's reply and amended reply to their responses to his proposed findings of fact. ECF No. 135. Although the local rules do not contemplate parties filing a reply in support of their proposed statements of fact, the court will not strike Walker's filings. The court found his clarifications with regard to where particular documents appear on the docket to be helpful. The court will disregard arguments he makes that are unrelated to the substance of his proposed facts.

The court will deny Walker's motion for the court to take judicial notice of excerpts from information inserts for the medication Ondansetron. ECF No. 117. Federal Rule of Evidence 201 makes facts of which judicial notice is taken conclusive. Accordingly, the accuracy of the statements must be indisputable. The statements of which Walker asks the court to take judicial notice do not meet this high standard. While it may be indisputable that these statements are made in the medication inserts, the accuracy of the substance of the statements is disputable. Even though the court will not take judicial notice of the statements in the medication inserts, Walker may use the medication inserts as evidence in support of his assertion that a genuine dispute of material fact exists. *See Rowe v. Gibson*, 798 F.3d 622, 629–30 (7th Cir. 2015); *see, e.g.*, *Brown v. Felten*, 721 F. App'x 538, 510 (7th Cir. 2018).

The court also will deny Walker's motion for the court to take judicial notice of statements about the Department of Corrections' search policies and procedures. Hill and Wallace have not moved for summary judgment, so the search issue is not currently before the court.

The court will deny as moot Walker's motion for an order to produce the security video. ECF No. 120. Counsel for Hill and Wallace mailed a copy of the video to the court shortly after Walker filed his motion.

Finally, the court will deny Walker's motion to exclude McArdle's expert witness testimony. ECF No. 131. The entirety of Walker's motion focuses on so-called evidence and testimony about McArdle's failure to discontinue Walker's Ondansetron prescription *after* he attempted suicide. However, Walker is not proceeding on a claim related to those allegations, so his motion is misdirected. *See* ECF No. 55 at 3 ("Plaintiff also fails to state a deliberate indifference claim against McArdle in connection with his allegations that, after he notified her that his hallucinations might be a side effect of Ondansetron, she referred him to a psychiatric nurse practitioner . . . ."). Further, McArdle offers no expert opinion for the court to exclude. As Walker points out, she did not submit a declaration or affidavit, nor does she cite to or rely on any of the discovery responses that Walker cites in his motion.

To be clear, the only claims the court allowed Walker to proceed with against McArdle are based on his allegations that she did not warn him about certain potential side effects of Ondansetron at the time she prescribed it. ECF Nos. 13, 21, 55. The court will disregard Walker's arguments regarding McArdle's alleged failure to establish a monitoring regimen after she prescribed Ondansetron and her decision to continue Walker's prescription after he informed her that he was experiencing hallucinations. The court dismissed claims based on those allegations at screening, so they are not before the court.

**BACKGROUND**

Walker is a Wisconsin State inmate who was incarcerated at the Wisconsin Secure Program Facility (WSPF) during the time at issue. ECF No. 129 at ¶ 4. McArdle is a nurse practitioner who, at all relevant times, was employed by Maxim and worked at WSPF. *Id.* ¶ 5.

On January 9, 2018, psychological associate Maria Lemieux (who is not a defendant) placed Walker on clinical observation to reduce his risk of self-harm. *Id.* at ¶ 9; ECF No. 91-1 at 18. She

also referred him to health services to address physical symptoms, including loss of appetite, dizziness, nausea, and mental exhaustion. ECF No. 129 at ¶ 10. The next day, Walker was released from observation status and escorted to a medical exam room. *Id.* at ¶ 12.

McArdle examined Walker and asked him to describe his symptoms. *Id.* at ¶ 14. Walker told her that he felt hopeless, had a loss of appetite, was dizzy, nauseous, and mentally exhausted. *Id.* at ¶ 15. Walker also explained that he had been suffering from nausea and vomiting for several days. ECF No. 100 at ¶ 10. McArdle prescribed a nutritional supplement, a liquid antacid, and a medication called Ondansetron for nausea. *Id.* at ¶ 12; ECF No. 129 at ¶ 17. According to Walker, McArdle did not inform him of any risks, drug interactions, or potential side affects associated with taking Ondansetron, nor did she ask him if he was taking any other medications. ECF No. 129 at ¶ 50–52. Walker asserts that, at that time, he had a long-standing prescription for a sleep aid called Mirtazipine, which McArdle had prescribed to him on at least two prior occasions. *Id.* at ¶¶ 36, 41, 117. Walker was not regularly taking Mirtazipine at the time McArdle prescribed Ondansetron. *See id.* 129 at ¶ 62.

Walker next saw McArdle about a week later, on January 18, 2018, for complaints of ongoing nausea and vomiting. ECF No. 100 at ¶ 22. Walker does not recall having or reporting any adverse side effects to his medications at that time. ECF No. 113 at ¶ 23.

The next day, on January 19, 2018, Walker was temporarily transferred to another correctional facility. ECF No. 129 at ¶ 60. Walker began regularly taking the sleep aid Mirtazipine about a week after he was transferred due to increased anxiety related to the transfer. *Id.* at ¶¶ 60–62. About a week after Walker began taking Mirtazipine regularly, he states that he began seeing and feeling ants crawling on him and in his cell, and he began seeing and talking to Jesus. *Id.* at ¶ 64; ECF No. 100 at ¶ 25. According to Walker, he also experienced agitation, headaches,

4

constipation, and a lack of coordination. ECF No. 129 at ¶¶ 40, 43–45, 66-68; ECF No. 100 at ¶ 26. Walker did not report these symptoms to health services staff because he did not want to be charged a $7.50 co-pay. ECF No. 129 at ¶ 70.

Walker was transferred back to WSPF on February 16, 2018. ECF No. 12 at ¶ 55. After returning to WSPF, Walker obtained a copy of the Ondansetron medication insert during medication pass. ECF No. 100 at ¶ 30. Walker read parts of the insert a few days later and did not read anything that caused him concern. *Id.* at ¶ 31; ECF No. 12 at ¶ 58.

According to the insert, the development of a condition called serotonin syndrome has been reported by patients who were using other serotonergic drugs, such as Mirtazipine, while taking Ondansetron. ECF No. 129 at ¶ 22; ECF No. 91-1 at 87. The insert describes the symptoms associated with serotonin syndrome as "mental status changes (e.g., agitation, hallucinations, delirium, and coma), autonomic instability (e.g., tachycardia, labile blood pressure, dizziness, diaphoresis, flushing, hyperthermia), neuromuscular symptoms (e.g., tremor, rigidity, myoclonus, hyperreflexia, incoordination), seizures, with or without gastrointestinal symptoms (e.g., nausea, vomiting, diarrhea)." ECF No. 129 at ¶ 26; ECF No. 91-1 at 87. The insert also states that, "Patients should be informed of the increased risk of serotonin syndrome, especially if Ondansetron is used concomitantly with other serotonergic drugs." ECF No. 129 at ¶ 29; ECF No. 91-1 at 87.

A few days after returning to WSPF, on February 19, 2018, Walker hanged himself in the outdoor recreation cage with a bedsheet. ECF No. 100 at ¶¶ 35, 39. Walker explains that he believed Jesus was telling him to "come to him." *Id.* at ¶ 40. Between the time Walker was transferred back to WSPF and his suicide attempt, Walker did not inform McArdle or Lemieux that he was suffering from any symptoms, complaints, or issues, including experiencing visual and auditory hallucinations. ECF No. 113 at ¶¶ 48, 50.

5

After his suicide attempt, Walker was transported to the emergency room. ECF No. 129 at ¶ 77. He states that, when he was able to speak, he told the doctor about his hallucinations. *Id.* at ¶ 78. The emergency room doctor told him to speak to his care provider at WSPF. *Id.* He recommended that Walker continue all his medications, including Ondansetron, and see a psychiatrist. *Id.* at ¶¶ 76, 78. Walker was then discharged to WSPF.

The next day, on February 20, 2018, Walker was examined by McArdle. ECF No. 129 at ¶ 79. Walker asserts that he told McArdle about his hallucinations and that he thought they might be a side effect of taking Ondansetron. *Id.* at ¶ 80. According to Walker, she stated that she was going to follow the emergency room doctor's recommendations and continue his medications, including Ondansetron, and refer him to the prison psychiatrist. *Id.* at ¶¶ 79, 87.

The following day, Walker was seen by psychiatric nurse practitioner Kirsch (who is not a defendant). *Id.* at ¶ 99. He reported to her that he suspected his hallucinations were an adverse reaction to taking Ondansetron. *Id.* According to Walker, she dismissed his suspicions and suggested a number of psychotropic drugs to counter his reported symptoms. *Id.* at ¶¶ 100–01. Walker asserts that he agreed to try the treatments, but only if they could first investigate and rule out whether his symptoms were being caused by his current medications. *Id.* at ¶ 102. To that end, Walker states that he requested an updated monogram of all current and proposed medications. *Id.*

The next day, on February 22, 2018, Walker received the monogram for Ondansetron, which includes instructions and information directed to the patient to whom the drug is prescribed. *Id.* at ¶¶ 104–05. Walker notes that in the section titled "Side Effects," the monogram states, "This medication may increase serotonin and rarely cause a very serious condition called serotonin syndrome/toxicity. The risk increases if you are also taking other drugs that increase serotonin, so tell your doctor or pharmacist of all the drugs you take. . . . Get medical help right away if you

6

develop some of the following symptoms: fast heartbeat, hallucinations, loss of coordination, severe dizziness, severe nausea/vomiting/diarrhea, twitching muscles, unexplained fever, unusual agitation/restlessness." *Id.* at ¶ 107; ECF No. 91-1 at 56.

After reviewing this information, Walker decided to stop taking Ondansetron. ECF No. 129 at ¶¶ 81, 111. According to Walker, his symptoms of hallucinations, agitation, constipation, lack of coordination, and delirium all stopped within a couple days of when he stopped taking Ondansetron. *Id.* at ¶¶ 81, 112. Walker explains that, had he known the possible side effects of taking Ondansetron, he would not have agreed to take it. *Id.* at ¶ 119.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

**A. Deliberate Indifference**

Walker is proceeding against McArdle on a deliberate-indifference claim under the Eighth Amendment based on his allegations that she failed to warn him about the potential side effects of Ondansetron when she prescribed it. ECF No. 21. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). In the context of a failure-to-warn claim, the Seventh Circuit has explained that: "The Eighth Amendment protects inmates from deliberate indifference to *substantial* risks of serious damage to their health." *Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 367 (7th Cir. 2013). Accordingly, to survive summary judgment, Walker must provide evidence from which a reasonable jury could conclude that the risk he faced of developing serotonin syndrome was "substantial, or substantial enough that a reasonable patient would be apprised of them." *Id.* He must also demonstrate that McArdle knew he faced a substantial risk of developing serotonin syndrome and that she disregarded the risk. *See id.*

While Walker asserts that he experienced side effects associated with serotonin syndrome, including hallucinations, agitation, constipation, lack of coordination, and delirium, the evidence he supplies does not support a reasonable inference that he had an excessive risk of developing those side effects at the time McArdle prescribed Ondansetron. Walker points to the medication insert and monogram for the drug, but, while they identify the many potential side effects of Ondansetron, they do not quantify the risk a person has of experiencing any given side effect. In fact, the closest the monogram gets to quantifying the risk is to note that the medication "may" increase serotonin and "rarely" causes serotonin syndrome. ECF No. 91-1 at 56. Without specific quantification of

8

the risk, "no rational factfinder could conclude that [McArdle] ignored an 'excessive' risk to [Walker's] health, even if she did not warn him about possible side effects." *Brown v. Felten*, 721 F. App'x 538, 540 (7th Cir. 2018) (affirming summary judgment in favor of medical official where plaintiff provided printouts that identified side effects without quantifying the risks of developing those side effects).

Walker highlights the fact that the Odansetron insert specifically notes that patients should be informed of the increased risk of serotonin syndrome, especially if Odansetron is taken along with other serotonergic drugs, such as Mirtazipine. However, Walker's reliance on this statement ignores a few key facts. First, at the time McArdle prescribed Odansetron, Walker was not taking Mirtazipine. Although he had a prescription for the drug, he did not begin to regularly take it until after he was transferred to a different institution. Thus, at the time McArdle prescribed Ondansetron, Walker did not have an increased risk of developing serotonin syndrome. And, even if he did, just because a risk has *increased* does not mean it has become *excessive*.

Second, as the Seventh Circuit has explained, "[A] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). To survive summary judgment, Walker must provide evidence from which a jury could reasonably conclude that McArdle's decision not to warn him of certain side effects departed so radically "from accepted professional judgment, practice or standards" that her "decision was not based on professional judgment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 663 (7th Cir. 2016) (citations and internal quotations omitted). A drug manufacturer's opinion about what medical providers generally should tell patients does not establish the accepted professional judgment, practice, or standards with regard to what a medical provider should tell a particular patient. Because Walker

9

offers no evidence to create a triable issue of fact on whether McArdle's failure to warn him departed radically from accepted professional practice as it relates to him, his claim cannot survive summary judgment. *See Williams v. Kelly*, Case No. 15-C-8135, 2018 WL 1911820, at *5 (N.D. Ill. April 23, 2018).

Finally, Walker asserts that he was harmed by McArdle's failure to warn because he would not have taken Odansetron if he had known he was at risk for developing serotonin syndrome. However, Walker presents no evidence to support a conclusion that he actually suffered from serotonin syndrome. Walker describes certain symptoms that he began to experience once he started taking Mirtazipine and Ondansetron at the same time, and he points out that those symptoms are associated with serotonin syndrome, but, as the old adage goes, correlation does not imply causation. Walker concedes that he had a number of stressful factors in his life at the time he began to suffer the symptoms he describes, including a sudden transfer to a new institution, an upcoming milestone birthday that he would have to endure in prison, and estrangement from his family. He presents no evidence from which a factfinder could reasonably conclude that the interaction of Odansetron and Mirtazipine caused his symptoms or that those symptoms were indicative of serotonin syndrome. Whether a particular medication caused a particular symptom can be established only by expert testimony, and Walker provides none. Accordingly, Walker's lack of expert testimony is fatal to his claim. *See, e.g.*, *Cole v. Janssen Pharmaceuticals, Inc.*, 759 F. App'x 518, 520 (7th Cir. 2019).

For the foregoing reasons, the court finds that McArdle is entitled to summary judgment on Walker's deliberate-indifference claim.

**B. Informed Consent, Wis. Stat. § 448.30**

Walker's only remaining claim against McArdle is a state claim for medical negligence, which is based on McArdle's alleged failure to obtain Walker's informed consent before prescribing

Ondansetron. The only ground for jurisdiction over that claim is 28 U.S.C. § 1367, under which the court may exercise supplemental jurisdiction over state claims that form "part of the same case or controversy" as the federal claims. "[S]upplemental jurisdiction is not appropriate merely because the [federal claim and state] claim [are] 'tangentially related' or share a broad factual background." *Birdo v. Mathis*, Case No. 15-cv-456, 2015 WL 3948150, at *3 (N.D. Ill. June 26, 2015). Instead, whether to exercise supplemental jurisdiction depends on whether the proof necessary for the state law claim overlaps with the proof necessary for the federal claim. *Id.*

In addition, under § 1367(c)(3), a federal district court may decline to exercise supplemental jurisdiction over state claims once federal claims have been dismissed. It is only in certain circumstances that a court must retain jurisdiction. *See Hansen v. Board of Trustees*, 551 F.3d 599, 608–09 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction."). A court should retain jurisdiction over state law claims under § 1367 when, for example, the statute of limitations has run on a state claim, substantial judicial resources have been expended on the claim or resolution of the claim is clear. *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251–52; *Hansen*, 551 F.3d at 608–09.

The court is dismissing Walker's federal claim against McArdle. Walker's only remaining federal claims are against Wallace and Hill, who did not move for summary judgment. Walker is proceeding on a deliberate-indifference claim against Wallace and Hill based on his allegations that they ignored his threats of self-harm. Accordingly, the proof required for Walker's state informed consent claim against McArdle will not overlap with the proof required for his federal deliberate indifference claim against Wallace and Hill.

11

Further, there are no circumstances that would warrant the court maintaining jurisdiction over Walker's state claim against McArdle. There is no suggestion that the statute of limitations has run on that claim, which involves an incident that occurred in January 2018. In addition, very few judicial resources have been expended on the claim. Finally, questions of fact may preclude the court from resolving the claim without difficulty. Accordingly, the court declines to exercise supplemental jurisdiction over Walker's state claim against McArdle, and will dismiss that claim without prejudice to Walker filing it in state court. *See, e.g.*, *Birdo*, 2015 WL 3948150 at *3 (dismissing state claims that had only a tangential relationship to the surviving federal claims).

Finally, because Walker is proceeding against McArdle's employer based on a theory of *respondeat superior*, the court will also dismiss his claim against Maxim without prejudice to him filing it in state court.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the motion for summary judgment filed by Sandy McArdle and Maxim Physician Resources (ECF No. 98) is **GRANTED** with respect to plaintiff Marcellous Walker's claim that McArdle violated his Eighth Amendment rights and **DENIED** with respect to Walker's claim that McArdle violated Wis. Stat. § 448.30 and that Maxim is liable under a theory of *respondeat superior*. Pursuant to 28 U.S.C. § 1367, the state law claims against McArdle and Maxim are **DISMISSED without prejudice** to Walker refiling the claims in state court.

**IT IS FURTHER ORDERED** that McArdle and Maxim's motion to strike (ECF No. 135) is **DENIED**.

**IT IS FURTHER ORDERED** that Walker's motion for leave to increase the number of additional statements of fact and exceed page limits of his response brief (ECF No. 111) is

**GRANTED**, his motion for the court to take judicial notice (ECF No. 116) is **DENIED**, his motion to order release of the security video (ECF No. 120) is **DENIED**, and his motion to exclude defendants' evidence and expert witness testimony (ECF No. 130) is **DENIED**.

The court will set a status conference to discuss next steps on Walker's claims against defendants Laverne Wallace and Shelly Hill.

**SO ORDERED** this  19  day of July, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court